# THE COUNTY COURT OF MADISON COUNTY

*v.*

# THE PEOPLE OF THE STATE OF ILLINOIS *ex relatione* THE TOLEDO, WABASH & WESTERN RAILWAY CO.

1. PRACTICE *in proceedings for mandamus—quashing the return.* A return to an alternative writ of mandamus set forth certain objections to granting the relief sought, which were in the nature of a demurrer. A motion was entered to quash those portions of the return, and a cross motion to quash the alternative writ. Although such practice was irregular, the court treated the questions presented as arising on demurrer.

2. CONSTITUTIONAL LAW—*lending the credit of the State.* That portion of the act of January 23, 1869, amendatory of the charter of the Decatur & East St. Louis Railroad Company, which permits a portion of each of several counties to give its credit and aid to the corporation, is not in violation of that clause of the constitution of 1848 which forbids the credit of the State to be given to, or in aid of, any individual, association or corporation.

3. SAME—*authorizing corporate authorities to assess and collect taxes—what constitutes a corporation.* But the portions of a county which that act attempted to authorize to create a debt in aid of the railroad, and for the payment of which a tax might be assessed upon the property within the designated district, were not endowed by the act with any of the elements of a municipal corporation, being merely portions of the territory comprising a county, and could not be authorized by the legislature to create a debt which must be paid by taxation. The authority given to the legislature by sec. 5 of Art. 9 of the constitution of 1848, to vest the corporate authorities of counties, etc., with power to assess and collect taxes for corporate purposes, could not be exercised in respect to a fractional portion of any such corporation.

4. SAME—*uniformity of taxation.* If the debt thus created was to be regarded as a debt against the county, but to be paid by taxation upon property in a district comprising only a portion of the county, then the tax would not be uniform in respect to persons and property in the county, and would be repugnant to that clause of the constitution requiring such uniformity.

5. SAME—*submission to a vote of less than the whole.* The submission of the question of creating a debt against the county, at an election confined to a portion of the people of the county to the exclusion of the other citizens, will not bind the county, for if the obligation of the county to pay the

debt shall arise from a vote of the people, the election must be so held that all the citizens of the corporate body may vote upon the question.

6. Fraud—*inadequate consideration.*   Where certain county authorities agreed to transfer to a railroad company $50,000 of its stock for the sum of one dollar, when the same should be subscribed upon a vote to be taken for the purpose and for the issuing of bonds for its payment, it not appearing the subscription was intended to be a donation to the company, it was *held,* the gross inadequacy of the consideration was such evidence of fraud that the county could not be compelled to make the transfer.

Appeal from the Circuit Court of Madison county; the Hon. Joseph Gillespie, Judge, presiding.

Mr. A. W. Metcalf and Mr. Charles P. Wise, for the appellant.

Mr. W. E. Nelson and Messrs. Dale & Burnett, for the appellees.

Mr. Justice Walker delivered the opinion of the Court:

This was a petition for a mandamus, filed by the people on the relation of the Toledo, Wabash & Western Railway Company, against the county of Madison.

It appears, that at the session of the general assembly, held in 1867, an act was adopted which took effect on the 26th of February of that year, by which the Decatur & East St. Louis Railroad Company was incorporated, with full power to construct a road on the route therein designated; that the company was duly organized, and proceeded to construct a road on the specified route, which was completed before this proceeding was instituted, and was then in operation; that on the 23d day of January, 1869, the charter of that company was amended, by which Madison and other counties therein named. were authorized to subscribe to the capital stock of the road an amount each, of not exceeding $100,000, and to issue bonds therefor.

By the second section of this amendatory act, it is provided, that if the county authorities shall be of the opinion that the

road would be a special advantage to the inhabitants or own-
ers of property in a particular strip, district or section of the
county, and not of great advantage to the county at large, they
may subscribe such sum as they shall deem proper to the cap-
ital stock, or as a contribution in aid of the railroad company,
and shall issue their bonds therefor as in other cases, which
are declared to be valid and binding. And the county author-
ities are empowered, and it is declared to be their duty, to take
all proper steps and to make all necessary rules and regula-
tions for collecting the necessary revenue to pay the principal
and interest out of, and upon the inhabitants and property in
such strip, district or section, in the same manner as for the
county at large. The strip, district or section, is required to
be specifically designated by the county authorities at the time
of making such subscription.

It also declares, that no part of the tax assessed upon the
railroad for county purposes, within such strip, district or sec-
tion, shall be applied to any other purpose than the payment
of the indebtedness thus created, with its interest. The act
declares, that no such subscription shall be made until the
strip shall be designated by commissioners, and the proposition
for subscription or contribution shall have been submitted to
the legal voters of such strip, district or section, and sanctioned
by a majority of the votes cast at such election. The tenth
section of this act authorizes counties, towns, &c., to sell and
dispose of the stock obtained by such subscription to the rail-
road company, on such terms and for such sums as may be
mutually agreed upon by the parties.

It further appears, that the county court of Madison county
did, on the 14th day of April, 1869, by an order of that date,
submit to the voters of a strip through which the road was
located, in that county, the question of subscription of $50,000
to the capital stock of the road, which resulted in favor of
such subscription. The county court, on the 8th day of June,
1869, subscribed that sum to the capital stock of the company,
chargeable exclusively to the strip or portion of the county

which had voted in favor of the same, and pledged the county to issue bonds for that sum, bearing eight per cent interest, and running twenty years. And the subscription provides, that when the bonds are issued and the stock delivered, the county will sell the stock to the railroad company for the sum of one dollar. It is alleged, that in submitting the question to a vote, the law was fully complied with in all of its requirements. It is also averred, that the road was completed, and all of the terms and conditions of the subscription had been performed.

It is also averred, that the Decatur & East St. Louis Railway Company was, on the 9th day of August, 1870, consolidated with relator, and that the name assumed by the consolidated company, is " The Toledo, Wabash & Western Railway Company." It is averred relator did, on the 1st day of December, 1870, tender to Madison county a certificate of 500 shares of the capital stock of the Decatur & East St. Louis Railroad Company, which had been entered on the books of that company before the consolidation was made, and demanded that the county issue and deliver the $50,000 of bonds thus subscribed, and also tendered the county the sum of one dollar, and requested the county to assign and transfer the stock to relator, but the county court refused to issue the bonds and assign the certificates of stock to them.

It appears, from the return to the alternative writ, that after the strip or portion of Madison county was set apart and designated by commissioners appointed for the purpose, an election was held therein, to determine whether a subscription of $50,000 should be made to the capital stock of the company, which resulted in a majority of the votes cast against subscription ; and that afterward, another election was called in the same strip or portion of the county, which resulted in favor of subscription. It is further shown in the return, that when the vote was taken, the road had been located so as to run through townships 3, ranges 8 and 9, but the company afterward so changed the road bed that, when constructed, it did not pass through those townships, and they were thus

deprived of the benefit of all taxes arising from such road, with which to pay such indebtedness. The return sets up as a defense, that the act under which these proceedings were had, is in violation of the State constitution.

Upon filing the return, relator entered a motion to quash so much and such parts of the return as are here specified :

*First,* "So much of the said return as alleges that the said act of the legislature of the State of Illinois, in force January 23d, 1869, in the alternative writ mentioned, is in violation of article 3, section 38, of article 9, sections 2, 5 and 6, article 13, section 8, of the constitution of the State of Illinois, in force until August, 1870, and also in violation of the constitution of the United States," &c.

*Second,* "So much of said return as alleges that an election had been ordered and held previous to the said election in the said alternative writ mentioned."

*Third,* "So much of said return as alleges that there was no legal election held, except the one mentioned and set forth in said return."

*Fourth,* "So much of said return as alleges that the election mentioned in the alternative writ was to subscribe stock, and not for the purpose of donation or bonus, as alleged in said writ."

*Fifth,* "So much of said return as alleges that the agreement to sell said stock for one dollar is illegal and without authority of law," etc.

*Sixth,* "So much of said return as alleges, that at the time of the designation of the said strip in the said writ mentioned, the Decatur & East St. Louis Railroad Company represented to the householders, appointed by the judge of the circuit court, that said railroad was located or would run through town 3, range 9, and upon such representation the said householders aforesaid designated as part of said strip for subscription and taxation all of said strip located in town 3, range 8, and town 3, range 9, along with the portions mentioned in said writ, and that after the designation of said strip, and after the election,

said railroad company changed its track by diverging north-westerly, so as to run in a direct line to the Indianapolis & St. Louis Railroad, at Mitchell station," etc.

The relator traversed the remainder of the return, and respondent entered a cross motion to quash the alternative writ, but the court overruled this latter motion and sustained the motion to quash the portions of the return specified in the motion. The cause was then heard by the court, by consent of the parties, upon such portions of the return as were traversed, and the court found for the relator and awarded the relief sought, from which decision of the court respondent prosecutes this appeal, and asks a reversal.

This judgment is erroneous, for several reasons. The objections to granting the relief sought, specified in the return, seem to have been in the nature of a demurrer, and quashing that portion of the return may be treated as overruling the demurrer to the alternative writ. Although such a practice is irregular, we may treat the questions presented in argument as arising on demurrer. The first question thus presented, is, whether there is any warrant in the constitution of 1848, for the legislation under which this subscription was made. The first portion of that instrument, referred to as being violated, is the 38th sec. Art. 3, which declares, "The credit of the State shall not, in any manner, be given to, or in aid of, any individual, association or corporation." It will be perceived that this law does not purport to give the State's credit to this company, but simply to authorize a small district of the county to give its credit and aid to the corporation. It neither gives directly nor indirectly, money from the treasury, or bonds, or property of the State, to this road. We fail to see that this section has any bearing on the validity of the law under consideration. The State in nowise became liable for the payment of the county bonds or the interest thereon, but leaves the persons and property of the district liable for their payment.

The act is in no sense compulsory on the people of the district, or it might be urged with more plausibility that the act

loaned the credit of the State to aid in the construction of the road. We fail to perceive how secs. 2, 5 and 6, Art. 13, can have the least relation to the act under consideration. We presume the draftsman has made a wrong reference in the return, and other provisions were intended to be cited.

It is urged in argument, that the act is repugnant to sec. 5, Art. 9. It declares that, " The corporate authorities of counties, townships, school districts, cities, towns and villages, may be vested with power to assess and collect taxes for corporate purposes, such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same." This, then, presents the question, whether the territory upon which the burden of this tax is proposed to be levied, and the debt virtually imposed, is a corporation. The act gives it none of the distinctive features of a body politic. It is not declared to be a corporation, nor has it any of the powers or authority of such a body. It appears, by the return of the commissioners, to be composed of portions of several congressional townships, and no doubt embraces several school districts, and portions of others. It can neither sue nor be sued; it has no succession, is governed by no municipal officers, but is simply a territory in which the citizens may first vote whether the county shall subscribe stock to a railroad company, and then the persons and property in that district be burdened with its payment. The imposition of the debt, and the levy of a tax for its payment, are not sanctioned by this provision of the constitution, and if this strip of the county is claimed to be liable under its provisions, then the law is invalid, as it is not a corporate body.

If, on the other hand, it be claimed it is a debt against the county, to be paid out of the property of this strip, then it is not uniform in respect to the persons and property of the county, and is repugnant to that section of the constitution. The power to impose a corporate debt, or tax, on a portion of the persons or property of a corporate body, is expressly prohibited, and this law can not be sustained under this provision.

Again, a portion of the citizens of a county, at an election confined to them, and from which the other citizens are excluded, can not impose a debt upon the county. It was held, in the case of *The People, &c.,* v. *Chicago,* 51 Ill. 17, that a municipal corporation could not be compelled to issue their bonds, unless sanctioned by a vote of the citizens of the corporate body, or the debt was incurred by officers elect with the power. It was, then, necessary there should be a vote of the citizens of the county in favor of creating the debt, before it could be required to issue these bonds, or that they should have elected corporate officers who were, by the charter, authorized to create a debt binding the corporate body. No such election was, or could be held, and hence the county can not be required to issue the bonds so as to render it liable for their payment.

The 5th sec. of Art. 9, is a limitation on the taxing power of the State. It only authorizes the legislature to permit a municipal corporation to impose a tax, and hence restrains the legislature from imposing such a tax, unless it be for the payment of a debt created by such a body. We have held, in several cases, that the legislature has no power to impose such a tax, or to authorize individuals to impose the same ; and the same is true of the power to create corporate indebtedness. This district, upon which it is proposed to place this burden, not being a corporation, the legislature could not authorize its citizens to create the debt, and they are not liable ; and as the authority was not given to the county to create such a liability, the legislature could not impose the burden on the county, or empower the citizens of a fraction thereof to impose such a liability. We are unable to find any warrant in the constitution for the enactment of this portion of the amendment to the charter of the railroad company.

Again, this writ prays, that the county be compelled to issue the bonds, and to transfer to relators the certificate of stock for the consideration of one dollar. The consideration seems so monstrously inadequate, that we feel, that to compel its

assignment, would be to perpetrate a grevious wrong on the people of the county. The recital in the order of the county court, that the subscription was intended as a donation, is not borne out by any proof in the record. On the contrary, the notice calling the election does not state it was so intended, and we are at a loss to conjecture how it could be otherwise proved. But we can never consent to exercise a discretion to compel the county to assign $50,000 of the capital stock in a powerful and rich railroad company for the sum of one dollar; it looks like a fraud *per se.* We could not, if the bonds were legally voted, ever compel this stock to be thus transferred.

This question was before us in the case of *Macoupin County* v. these appellees, *ante,* 191, at the present term, where it was held, that such a sale would not be compelled by mandamus. That case is conclusive of this question.

The judgment of the court below, awarding a peremptory writ of mandamus, is reversed.

*Judgment reversed.*